74      APPELLATE COURTS OF ILLINOIS.

Conover v. Harrisburg & Southern Coal Co., 161 Ill. App. 74.

## Nora Conover, Appellee, v. Harrisburg & Southern Coal Company, Appellant.

1. MINES AND MINERS—*what evidence competent to show condition of entry.* In the absence of evidence showing identity of conditions, testimony as to the condition of an entry several days after the accident is incompetent.

2. MINES AND MINERS—*what evidence competent to show condition of entry.* Held, that evidence of the condition of the entry several days prior to the accident was competent.

3. MINES AND MINERS—*what evidence competent, what not, to show knowledge of dangerous conditions.* Held, that it was improper to permit a witness to state that the mine manager and examiner had learned of the accumulation of gas, because it was reported in the book kept for that purpose,—such book was the best evidence.

4. MINES AND MINERS—*what evidence competent to show condition of entry and knowledge thereof by the operator.* Evidence of conditions in the part of the mine where the explosion occurred existing within such time as might tend to show its condition at that time, is admissible.

5. MINES AND MINERS—*when declarations of mine examiner incompetent.* The declaration of a mine examiner not made while he was in the discharge of his duties as to the quantity of gas in an entry, is not competent, either as an admission or as part of the *res gestae.*

6. MINES AND MINERS—*competency of prior explosions.* Held, that evidence of another explosion in the same part of the mine two days before the accident in question, was competent in corroboration of other evidence tending to show the presence of gas leaks or feeders and other explosive conditions. Held, further, that the effects of such prior explosions, etc., were not competent.

7. MINES AND MINERS—*what evidence incompetent upon question of damages in connection with loss of means of support.* Testimony by the wife that her husband spent most of his time at home with her and the children and that he was the only support she had and that she had no other means of support, is incompetent as tending to impress the jury with the loss of companionship, and there could be no recovery except for pecuniary loss.

8. EVIDENCE—*what competent by way of impeachment.* Written statements signed by a witness containing statements contradictory to his evidence, are competent to be used by way of impeachment, even though the witness had testified that the entire paper was not read over to him before he signed it.

Action in case for death caused by alleged wrongful act. Appeal from the Circuit Court of Saline county; the Hon. A. W. LEWIS, Judge, presiding. Heard in this court at the October term, 1910. Reversed and remanded. Opinion filed April 15, 1911.

DENISON & SPILLER, for appellant; M. S. WHITLEY, of counsel.

RONALDS & DODD, H. ROBERT FOWLER and CHOISSER, CHOISSER & KANE, for appellee.

MR. PRESIDING JUSTICE SHIRLEY delivered the opinion of the court.

Appellee as the widow of Guy Conover brought this action to recover damages for injury to her means of support occasioned by the alleged wilful failure of appellant to comply with certain provisions of the law in relation to mines and miners and which resulted in the death of her husband. The declaration contained five counts, in the first of which it was charged that appellant wilfully failed to provide currents of fresh air throughout the mine and certain entries and rooms, sufficient for the health and safety of deceased, so that all parts of the same would be reasonably free from standing powder smoke and deleterious air; that deceased in the discharge of his duty as shot firer went into one of said entries called the northwest and the rooms leading therefrom to fire shots; that he did light and fire several shots in and near said entry and that on account of said improper ventilation quantities of powder smoke, particles of dust, gas and other inflammable elements were permitted and allowed to accumulate in said entry and room and that upon firing the shots, the said smoke, dust, gas and other inflammable substance became ignited and exploded, thereby killing the deceased. The several breaches of duty charged in the other counts were in the second, that appellant wilfully permitted the deceased to enter the mine before said dangerous con-

76 APPELLATE COURTS OF ILLINOIS.

Conover v. Harrisburg & Southern Coal Co., 161 Ill. App. 74.

ditions had been made safe; in the third that it wilfully failed to spray, sprinkle and clean the entries, rooms and roadways which were dry and dusty, and which dust caused the explosion; and in the fourth that it wilfully failed to close the cross cuts by building the stoppings in a substantial manner of brick or other suitable building material, but did build them in an unsubstantial manner of slate, coal, lumber and other unsuitable material and that they were not built for temporary purposes; that they were so built that there were spaces between the top of the stoppings and the roof of the mine and that the air was thereby permitted to go in various parts of the mine and was not forced to the working places and to the said entries and rooms, whereby gas, powder, smoke, dust and deleterious air accumulated which when deceased fired a shot, were ignited and caused the explosion which resulted in his death. The fifth count alleged the same conditions resulting in the killing of Conover and a wilful failure to have said entries, rooms and galleries examined by the mine examiner and to have marked the places where such dangerous conditions existed; to report his findings to the manager; to make a record of it; and not allow the deceased to enter the mine to work except under the direction of the mine manager until such conditions had been made safe.

There was a verdict finding the appellant guilty upon which the court rendered judgment.

The dangerous conditions in the mine arising from standing dust, smoke, gas and deleterious air which accumulated by the alleged wilful failure to comply with the requirements of the statutes, were the breaches of duty charged against appellant. The evidence on behalf of appellee was all directed to this point in an effort to prove the dangerous conditions charged were the proximate cause of the death of Conover, while appellant introduced evidence to disprove the charge and to show that the explosion and death

were not caused by such conditions, but resulted from the excessive use of powder combined with shots so rapidly fired by Conover and his partner that a highly explosive gas called carbon monoxide was thereby generated and exploded by the flame or heat given off by the shots.

Much evidence was introduced by both parties tending strongly to support both theories but as the judgment cannot be affirmed on account of prejudicial error in ruling upon the admissibility of evidence, we forbear comment or discussion of it, or the expression of any opinion of its weight.

The court, over appellant's objection, admitted testimony to show conditions in the entry where the explosion occurred several days afterward and the witness testified to seeing torn track, an upturned car and rock down. Also that "there seemed to be a considerable lot of dust." There was no evidence that conditions were the same as at the time of the explosion, and in the absence of such evidence, the testimony was too remote and should have been excluded. The evidence of dust there was especially harmful as it tended to show explosive conditions several days after the accident with no proof that the condition had remained the same.

Evidence was also admitted over appellant's objection, to show the entry and rooms where the explosion occurred were dusty and dry two or three days prior to the explosion. The evidence was properly admitted. It tended to show conditions as to dust at the time of the explosion and also tended to show notice to appellant of the dusty condition and therefore a conscious violation of the statute as alleged in the declaration. Evidence of the bad condition of the air current two or three days prior to the explosion was admissible for the same reason. It may be said conditions could change in two or three days and such change might be shown, but this is not enough to exclude the evidence as tending to prove material facts.

A witness was permitted to state that the mine manager and examiner had learned of the presence of accumulations of gas because it was reported on the book. If the book contained a report which was the source of their knowledge of the presence of the gas, the book was the best evidence and the testimony of the witness was improper. Objection was made to a witness, a practical miner, testifying that the entry had been giving off gas two or three months and that it could have been detected by a careful examination by the mine examiner or mine manager. There was no error in admitting the evidence. It tended to show a condition of which appellant might have had notice.

A statement of the mine examiner as to the quantity of gas in the entry made when the evidence did not show he was there in the discharge of his duty, was admitted. This was the declaration of an agent when he was not in the discharge of his duties and did not accompany any act he was authorized to do and was not admissible as part of the *res gestae*. Without discussing this line of testimony further we are of opinion that any competent evidence of the conditions in the part of the mine where the explosion occurred, existing within such time as might tend to show its condition at that time, would be admissible.

Evidence was admitted of another explosion in the same part of the mine two days before. The evidence was admissible in corroboration of other evidence tending to show the presence of gas leaks or feeders and other explosive conditions, but we do not see that the effects of the explosion, nor how it compared with the explosion which resulted in the death of Conover, were material. We are also of opinion the evidence of the condition of the mouths of the rooms and the brattices in the cross-cuts was admissible on the question of whether the air was not forced to the working places as alleged in the fourth count of the declaration but it was immaterial whether the mine examiner had not closed them.

Criticism is made of the testimony of appellee on the subject of damages. She was permitted to testify that her husband spent most of his time at home with her and the children and that he was the only support she had and that she had no other means of support. This testimony tended to impress the jury with loss of companionship when there could be no recovery except for the pecuniary loss, and also tended to show the financial condition of the wife. The testimony should be limited to the earnings of the husband, his age, habits and condition of his health and whether the wife was supported by him. Brennen v. Carterville Coal Co., 241 Ill. 610.

A witness, Charles Barton, testified in chief when introduced by appellee, that on July 2nd, the date of the explosion, he was in the entry ways where the explosion occurred and that the air was bad and foggy and impregnated with dust and the air current was not good and had not been for some time. And that the northwest entry had not been sprinkled from the mouth of room eight to the face of the coal for some time, and that where the entry had been sprinkled, it was in the center leaving it dry at the sides. This was material and important testimony in support of appellee's theory that the explosion was caused by dust, smoke, gas and deleterious air. On cross examination appellant offered to introduce a written statement of the witness which he admitted having signed, but said: "Think part of the paper was read over to me, don't think it all was. There is some questions in there I did not hear read over" and thereupon the court excluded the statement from the jury. The statement recited that the witness was in the entry at 3:30 P. M. on the afternoon of the day of the explosion and the air seemed all right, and that two days before he was in the northwest entry within six or eight feet of the face; that there was no accumulation of dust and the entry was in a moist condition as a result of sprinkling. The statement contradicted material tes-

timony of the witness and its exclusion was prejudicial error.

The witness admitted he signed the paper and his denial that he did not hear some of it read was no reason for excluding it. It should have been admitted together with his statement and other evidence of the circumstances attending his signing it and the weight of it left to the jury.

It was also error for the same reason to exclude the written statements of L. E. Ross and Asa Ross offered by appellant to contradict them.

It would be impossible within the limits of an opinion to consider in detail all the criticisms made of the rulings of the court upon the admissibility of evidence, but we have endeavored to consider the material points and to make suggestions that may obviate erroneous rulings upon another trial.

For the errors indicated, the judgment will be reversed and the cause remanded.

*Reversed and remanded.*